UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                     :

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **OPINION AND ORDER** |
| | : | **DENYING GOVERNMENT'S** |
| -against- | : | **MOTION IN LIMINE CONCERNING** |
| | : | **ADVERSE INFERENCE TO BE** |
| DOMINICK COLASUONNO and | : | **DRAWN FROM WITNESS'S** |
| PHILIP COLASUONNO, | : | **INVOCATION OF THE FIFTH** |
| | : | **AMENDMENT** |
| Defendants. | : | |
| | : | 05 Cr. 1110 (AKH) |

------------------------------------------------------X
ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        By letter dated October 4, 2006, the government moved in limine to limit the cross-examination of Michael Dupnak ("Dupnak"), a government witness it plans to call to the stand during the trial of Dominick and Philip Colasuonno for bank fraud and conspiracy to commit bank fraud. The government represents that Dupnak will assert his Fifth Amendment privilege against self-incrimination if asked about certain prior conduct tending to impeach his credibility as a witness. The defendants seek to impeach Dupnak on cross-examination with questions relating to such prior conduct and, in the event that he refuses to testify on Fifth Amendment grounds, defendants request that the court give an adverse inference instruction to the jury, allowing the jury to consider the witness's failure to testify as relevant evidence concerning the witness's credibility. The government argues that a witness's invocation of the Fifth Amendment privilege should have no evidentiary value, and that without value, questions designed to elicit invocation of the privilege should be precluded by this Court. For the reasons that follow, the government's motion is denied.

1

**Applicable Law**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Under the Fifth Amendment, a defendant may refuse to testify at trial, and the jury may draw no adverse inference against the defendant based on the invocation of his Fifth Amendment rights. See Griffin v. California, 380 U.S. 609 (1965). As a more recent corollary to this rule, the jury may not draw an adverse inference against a non-party defense witness when the witness claims Fifth Amendment privilege, because such an inference tends to "discount a defendant's constitutional rights." Brink's Inc. v. City of New York, 717 F.2d 700, 709 (2d Cir. 1983); see also United States v. Lizza Indus., 775 F.2d 492 (2d Cir. 1985) ("A prosecutor who uses the fact that a witness has invoked his Fifth Amendment privilege against self-incrimination to discredit that witness or to prejudice the defendant commits trial error."). I find no controlling authority, however, that squarely addresses the question presented here: whether the jury may draw an adverse inference against a non-party government witness who claims his Fifth Amendment privilege on cross-examination, and the defense requests that an adverse inference be drawn.[1]

**Discussion**

Michael Dupnak was the loan officer of J.P. Morgan Chase Bank, N.A. ("Chase") responsible for the loan account of defendants' companies, Prima Check Cashing, Inc., and American Armored Car, Ltd. The government expects to call Dupnak to testify about the account and relevant aspects of the bank fraud allegedly committed by defendants. In an earlier and unrelated civil case, however, relating to a different loan account, Dupnak invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions about improper

---

[1] The Courts of Appeals for the First and Seventh Circuits have permitted an adverse inference instruction to the jury in circumstances similar to those presented here. See United States v. Kaplan, 832 F.2d 676, 684 (1st Cir. 1987); United States v. Hartmann, 958 F.2d 774 (7th Cir. 1992).

2

conduct touching upon his honesty and integrity.  The government represents, based on information it considers reliable, that Dupnak is likely again to invoke his privilege if asked the same or similar questions in this criminal case.  Defendants Colasuonno say they plan to ask such questions and, if Dupnak invokes the privilege, they plan to ask for leave to argue in summation that Dupnak's refusal to answer, whether on grounds of privilege or otherwise, may be considered by the jury in relation to the credibility of Dupnak's testimony on direct examination.  Defendants ask also for an adverse inference instruction regarding the jury's ability to consider Dupnak's failure to answer in evaluating the credibility of his testimony.

The government moves to preclude the defendants from cross-examining on such subjects, arguing that a witness's invocation of his Fifth Amendment right not to testify in response to questions should not be the subject of comment because the invocation of privilege has little or no probative purpose, and therefore undue prejudice is likely to result.  See Fed. R. Evid. 403, and because an adverse comment in respect of a witness may depreciate the privilege of the defendants, if one or both then choose not to testify in their own behalfs.

Whether an adverse inference may be drawn, and the court may so instruct, is important to how the government and the defendants plan to question this witness.  If the invocation of the Fifth Amendment is sure to follow the defendants' intended line of questioning and no adverse inference may be drawn from that invocation, the government is correct that the question and invocation are distractions that would serve no purpose.  If impeachment questions are precluded, however, the witness's testimony is likely to be given more credibility than perhaps it should have in light of the prior conduct in which he allegedly engaged, conduct which, if true, directly impeaches his integrity and concern for truthfulness.  An adverse inference in this circumstance balances the competing interests of a defendant's Sixth

Amendment Confrontation rights and the witness's privilege against self-incrimination. The inference is drawn, if the jury wishes to draw it, with respect to facts that should be within a witness's knowledge but which the witness withholds for whatever reason from his testimony. See Brink's, 717 F.2d at 707–09 (balancing value of circumstantial evidence provided by witnesses' assertion of their Fifth Amendment privilege against prejudice to the defendant in a civil case).

In a criminal case, however, there is another concern, and that is a defendant's Fifth Amendment right not to testify. No adverse inference can be drawn, and no comment can be made, with regard to a defendant's decision not to testify. See Griffin, supra. In addition, an adverse inference instruction with regard to a witness's decision to assert his Fifth Amendment privilege may prejudice the jury as to the defendant's Fifth Amendment rights, because the instruction increases the likelihood that the jury will draw the very same adverse inference against the defendant.

In this case, the Colasuonno defendants waive the protection of the ordinary rule that no adverse inferences may be drawn against non-party witnesses who invoke the Fifth Amendment. They, not the government, request an adverse inference instruction in the event that Michael Dupnak asserts his Fifth Amendment privilege, and they and their attorneys acknowledge that the instruction might cause the jury to draw adverse inferences should one or both of them elect not to testify. Thus the rationale underlying the conventional wisdom that the jury may not draw an adverse inference against a non-party witness is not applicable in this case because waived by the defendants. If defendants are to be precluded from inquiring into Mr. Dupnak's prior bad acts, it must be for some reason other than defendants' Fifth Amendment rights.

The government suggests that a witness's Fifth Amendment rights prevent adverse inferences to be drawn against the witness. The argument is without merit, as the privilege protects against compelled testimonial self-incrimination, but not against questioning itself. See Brinks, 717 F.2d at 707 (citing J. Wigmore, Evidence § 2268 (3d ed.)). That is, the witness may not be required to answer, but he has no constitutional right, so long as the question is not coercive, to be free from being questioned. Whether and to what extent an inference may be drawn against the witness's credibility in a case where he testifies against some other, unrelated defendant is not the witness's concern.

Fairness is also a matter of consideration. In the Second Circuit, the government may not, under ordinary circumstances, obtain an adverse inference instruction against a defense witness who asserts his Fifth Amendment privilege on cross-examination by the government. See Lizza Indus., supra. One might argue that parity of cross-examination privileges as between the defense and prosecution is lacking if the defense may benefit from the assertion of privilege on cross, but the government may not. This argument fails, however, because the Fifth Amendment right belongs to the defendant, not the government.[2] The reason for refusing to give an adverse inference instruction is because of concern that it may erode the defendants' Fifth Amendment rights. The government has no Fifth Amendment right to waive, and cannot assert a defendant's right on his behalf when the result is convenient to its position.

The many cases cited by the Government are inapplicable. See e.g., United States v. Deutsch, 987 F.2d 878, 883–84 (2d Cir. 1993) (trial judge has discretion "to prevent a party from calling a witness solely to have him or her invoke the privilege against self-incrimination in

---

[2] In addition, the Second Circuit has observed that, when balancing the probative value of the witness's invocation of the Fifth Amendment against the danger of unfair prejudice to the defendant under Fed. R. Evid. 403, "[the] danger [of unfair prejudice] is not so great when the defense rather than the Government seeks to draw inferences from a witness's silence." United States v. Deutsch, 987 F.2d 878, 884 (2d Cir. 1993).

5

front of the jury"); United States v. Perez, 295 F.3d 249 (2d Cir. 2002) (trial judge may allow direct testimony to stand, even if privilege is invoked on cross-examination, provided that defendant has an adequate opportunity to test the truth of the witness's direct testimony).

For the foregoing reasons, I hold that the witness may testify on direct; that the defendants may ask questions on cross-examination that elicit the witness's assertion of his Fifth Amendment rights; and that if this occurs, the jury is entitled to an adverse inference instruction explaining what it may, but is not required to, infer from the witness's refusal to answer certain questions.[3]

SO ORDERED.

Dated:   October 24, 2006
         New York, New York

Alvin K. Hellerstein
United States District Judge

---

[3] Compare Dunbar v. Harris, 612 F.2d 690 (2d Cir. 1979) ("If a defendant's cross-examination is restricted by the competing fifth amendment right of a witness, it may be necessary to strike the direct testimony of that witness.") with United States v. Cardillo, 316 F.2d 606 (2d Cir. 1963) ("Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him.") (quoted and cited in Dunbar).

6